# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS MARSDEN, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 14-4340** |
| **MICHAEL SHIRAKAWA, et al.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **June 23, 2015**

An employee admittedly failing to meet his employer's defined mandate but nevertheless claiming his employer terminated him in retaliation for complaining of age discrimination must show his employer's insubordination reason is a pretext. Here, an employee repeatedly admitting the employer's several discipline steps were not based on his age and only raising the specter of age-based discipline after refusing to prepare his employer's required personal improvement plan may still defeat the employer's summary judgment motion on his retaliation claim if he shows direct or circumstantial evidence from which the jury could reasonably disbelieve his employer's stated business reason for terminating him. Here, the employee adduces sufficient evidence of genuine issues of material fact regarding whether his February 15, 2013 termination is based on a legitimate business reason of insubordination or is retaliatory for his admittedly belated claims of age discrimination as referenced in Defendants' records since 2009 particularly in a workplace

where at least three employees initially concealed age discrimination concerns in response to the employer's investigation.

Upon the employee's showing of several age-based concerns in his workplace, the question becomes: whom do we believe? Given issues of credibility regarding genuine disputes of material fact and the deference we now give the non-moving employee, we deny the Defendants' Motion for Summary Judgment on the retaliation claim in the accompanying Order but, finding no genuine issues on disparate treatment in the termination due to age, grant Defendants' Motion on the age discrimination and hostile work environment claims.

## I.   Undisputed Factual Background[1]

Defendant R.R. Donnelly & Sons Co. ("RRD") is "a global provider of integrated communications, including premedia, printing, logistics, and business outsourcing." (DSUF ¶1.) In 2001, RRD hired forty-one[2] year old Plaintiff Dennis Marsden ("Marsden") as a senior operator in the bindery department of RRD's Philadelphia facility, referred to as the "Baum Plant." (DSUF ¶¶2-3.) Defendant Michael Shirakawa ("Shirakawa") is President of the Baum Plant. (DSUF ¶4.)

---

[1]   The Court's Policies require that a Statement of Undisputed Material Facts ("SUF") be filed in support of a Fed.R.Civ.P. 56 motion as well as an appendix of exhibits or affidavits.  Defendants filed their SUF at ECF Doc. No. 26 (as corrected) ("DSUF").  Marsden responded to DSUF and, within that response, included a "Counterstatement of Material Facts" at ECF Doc. No. 37-1 (as corrected). Marsden's response to DSUF will be referred to as "PRSUF" and Marsden's "Counterstatement" will be referred to as "PCSUF." Defendants subsequently filed a response to PCSUF at ECF Doc. No. 35, referred to as "DRSUF." Defendants' Appendix is filed at ECF Doc. Nos. 26-1 through 26-6. Marsden submitted additional materials to the Appendix at ECF Doc. No. 33-1 through 33-7 (as corrected).  References to exhibits in the appendices shall be referred to by Bates number, for example, "MSJ00002."

[2]   Marsden's year of birth is 1960. (DSUF ¶5.)

### A. Marsden's 2007 promotion to manager and 2008 and 2009 performance reviews

In July 2007, Shirakawa promoted Marsden to bindery department manager. (DSUF ¶4.) Marsden reported directly to Shirakawa. (DSUF ¶7.)  In February 2008, Shirakawa provided Marsden's first performance review after promoting him to manager. (DSUF ¶9.)  Shirakawa gave Marsden an overall performance rating of "developing;" the middle range of six rating categories on RRD's "Salary Performance Appraisal" form. (DSUF ¶¶10-11.) [3] Marsden disagreed with the rating because previous performance reviews rated him a "key contributor" and, for that reason, refused to sign the 2008 performance review. (DSUF ¶¶12-13). Although he disagreed with the "developing" rating, Marsden testified he did not believe his age was the reason for it. (DSUF at ¶14.)

In September 2008, Shirakawa and Marsden met again to discuss performance. (DSUF ¶15.)  Shirakawa discussed various issues including staffing, weekly operations reports, and location of equipment. (DSUF ¶¶15-22.)  Marsden disagreed with Shirakawa, but does not claim Shirakawa's concerns were motivated by Marsden's age. (DSUF ¶22.)

In February 2009, Shirakawa rated Marsden "proficient" – one level higher than "developing" – on his annual performance review. (DSUF ¶23.)

### B. RRD's 2009 investigation into allegations of Shirakawa's age-based comments

In June 2009, George Platia, Senior Vice President of RRD's Commercial Print Group, visited the Baum Plant. (DSUF ¶¶24-28.)  Following his visit, Platia sent Shirakawa a memorandum noting, *inter alia*, "There is a feeling in the plant that management may view

---

[3] There are six categories of performance: "Unsatisfactory;" "Under Performing;" "Developing;" "Proficient;" "Key Contributor;" and "Top Performer." (MSJ000070.) Marsden received "Under Performing" in certain areas, and received "Developing" and "Proficient" in other areas for an overall rating of "Developing." (*Id.*)

tenured employees as a liability and many of your decisions regarding employees are based on age." (*Id.*; MSJ000092.) Platia warned Shirakawa: "We discussed that any actions resembling this type of behavior must stop or serious repercussions will take place. Hiring, promoting, rewarding, disciplining, and termination must be done according to company policy." (*Id.*)

Five months later, in November 2009, RRD received an anonymous complaint reporting Shirakawa for "making negative comments about employees based on their age." (DSUF ¶29.) Platia and Robin Gaskill, Regional Human Resources Manager at that time, conducted an investigation. (DSUF ¶30.) During the course of the investigation, Platia and Gaskill interviewed Marsden who reported age-based comments made by Shirakawa. (DSUF ¶¶31-35). Platia and Gaskill asked Marsden to describe the employment process. (MSJ000108.) Marsden explained his concerns about Shirakawa's hiring practices, including statements from "a long time ago" "that he is looking for younger talent." (DSUF ¶32). Marsden stated Shirakawa "never said what type of candidate he wanted to see, but off the record has made comments" such as "'Aren't you retired yet?' and comments about age limitations to people working in the trade." (DSUF ¶34; MSJ000108.)

Shirakawa denied making "negative comments about older workers." (DSUF ¶35.) However, Shirakawa expressed concern about "bringing people in near the top of the [compensation] range" because "there is not a lot of opportunity to move up." (DSUF ¶36; MSJ000108.)

RRD's Platia and Gaskill found they could not prove allegations of "age bias in a number of [Shirakawa's] comments and decisions," but found "[t]here is a definite perception that age bias exists at the Baum facility." (DSUF ¶39.) Platia and Gaskill warned Shirakawa of his responsibility "for the outcome of these perceptions." (DSUF ¶40.)

### C. Marsden's 2010 and 2011 performance evaluations

In 2010, Shirakawa again rated Marsden "proficient" on his 2010 performance review. (DSUF ¶41). "Proficient" is the highest performance rating received by Marsden in a management position. (DSUF ¶43.) Marsden does not claim that his 2010 performance review had anything to do with his age. (DSUF ¶46.)

Around 2011, RRD increased its performance expectations for all employees in response to changes in the print industry resulting from electronic-based print platforms. (DSUF ¶47.) Shirakawa rated Marsden "developing" in his 2011 performance review. (DSUF ¶48.) Shirakawa noted Marsden's strengths, weaknesses, and failures to perform, and concluded the review with the statement: "There is an expectation of immediate improvement moving forward." (DSUF ¶¶49-56.) Marsden testified his age did not play a role in his 2011 performance review. (DSUF ¶57.)

### D. Marsden's 2012 evaluations and discipline and Marsden's June 2012 complaints to RRD's Human Resources Director

In January 2012, Shirakawa completed a "Leadership Assessment Detail Report" rating Marsden "developing" in all competency areas. (DSUF ¶58.) Marsden testified his age did not play a role in his 2012 "Leadership Assessment Detail Report." (DSUF ¶59.)

#### 1. Marsden's June 2012 complaint to RRD's Director of Human Resources

On June 12, 2012, Marsden emailed Christine Hertneky, RRD's Director of Human Resources:

> "I am growing more concerned over my job. As an operator I was always a key to top performer. Since becoming a manager I have allways [sic] been proficient or developing. In the past I've heard comments of age, weight discrimination."

(DSUF ¶¶60-61; MSJ000139).

Marsden also detailed complaints with Shirakawa's management style. (DSUF ¶62.) Hertneky then contacted Marsden. (*Id.*) Marsden complained to Hertneky about Shirakawa's management style and reported dissatisfaction working with Shirakawa. (DSUF ¶64.) Marsden did not provide Hertneky with recent examples of "things that had happened around age." (DSUF ¶65.) Marsden "was afraid to" tell Hertneky because he feared Shirakawa would terminate him because of age. (*Id.*)

After Hertneky's call with Marsden, she traveled to the Baum Plant in mid-July 2012 to interview the management team, including Marsden. (DSUF ¶66.) Although she received some positive information about Shirakawa, Hertneky found the facility's management team to be "generally unhappy . . . for different reasons." (DSUF ¶¶67-68.) No one on the management team interviewed by Hertneky made any complaints of discrimination or "anything related to . . . age." (DSUF ¶69.) Hertneky did not find a perception of age bias and no one brought it to her attention. (DSUF ¶¶69-70.)

Based on Hertneky's findings, RRD decided Hertneky would coach Shirakawa regarding his working relationship with the facility's supervisors. (DSUF ¶71.) In coaching Shirakawa, Hertneky learned of Shirakawa's continued concerns regarding Marsden's performance. (DSUF ¶72.) Hertneky coached Shirakawa to hold Marsden accountable for performance issues according to the company's counseling process. (DSUF ¶73.)

### 2. August 2012 to January 2013 discipline

Consistent with Hertneky's coaching, Shirakawa issued Marsden a "Formal Reminder" on August 9, 2012, counseling Marsden for reacting inappropriately to an employee's question during an open forum meeting. (DSUF ¶¶75-76.) Hertneky and Carrie Zdobinski, Regional

Human Resources Manager, approved this "Formal Reminder."(DSUF ¶77.) Marsden refused to sign the "Formal Reminder." (DSUF ¶78.)

On September 20, 2012, Marsden arrived ten to fifteen minutes late to a meeting. (DSUF ¶83.) Shirakawa emailed Donna Ricciuti, Human Resource Manager for the Baum Plant, reporting Marsden's lateness. (*Id.*; MSJ000150.) On September 27, 2012, Ricciuti notified Shirakawa to report Marsden, "over the last few weeks," had been fifteen to twenty minutes late for the start of his shift. (DSUF ¶84.) Ricciuti reported she "did not get a sense from Dennis that he would make any extra effort to be in on time." (DSUF ¶85.)

In early November 2012, a series of material incidents occurred relating to Marsden. On November 2, 2012, Shirakawa directed Marsden on a staffing issue regarding the Baum Plant's "A shift" employees working the weekend. (DSUF ¶86.) Marsden, however, brought in a group of "A shift" employees for weekend work violating Shirakawa's directive. (DSUF ¶87.) Shirakawa felt Marsden violated a directive and caused RRD to incur unnecessary labor expenses. (DSUF ¶88.) On November 8, 2012, Marsden told Ricciuti he offered a day shift position to an employee without going through RRD's hiring process. (DSUF ¶89.) Marsden, required to clear all hiring decisions with RRD's Human Resources department, did not have permission to hire anyone for the position. (DSUF ¶¶90-91.) On November 9, 2012, Ricciuti and Marsden counseled another employee on a quality error. (DSUF ¶92.) During the meeting, Marsden told the employee the disciplinary action "was no big deal;" Ricciuti found it inappropriate for Marsden to minimize a disciplinary action. (DSUF ¶¶93-94.)

On November 9, 2012, Shirakawa, with Hertnecky's and Zdobinski's permission, issued Marsden another "Formal Reminder" for the November 2, 8, and 9 incidents. (DSUF ¶¶95-96;

MSJ000154.) Marsden signed this "Formal Reminder." (DSUF ¶97.) Marsden testified his age

did not play a role in the November 9, 2012 "Formal Reminder." (DSUF ¶98.)

On November 13, 2012, Shirakawa learned Marsden arranged for RRD's hiring of his

grandson through a temporary agency for a position in the shipping department. (DSUF ¶99.)

Just prior to this time, RRD laid off full-time employees at the Baum Plant. (DSUF ¶101.)

Marsden did not seek, or receive, permission from the Human Resources Department to arrange

for RRD to hire his grandson. (DSUF ¶100.)

Beginning in early December 2012 through January 2013, several incidents involving

Marsden resulted in a "Final Warning" to him:

- On December 6, 2012, Marsden arrived ten minutes late for a meeting with his subordinates, "disorganized and unprepared" without copies of documents needed for the meeting. (DSUF ¶¶102-104.) Marsden's failure to arrive on time resulted in lost production time as employees waited for him to arrive and obtain copies of necessary documents. (DSUF ¶¶105-106.)

- On December 7, 2012, Marsden failed to timely complete a demonstration of the plant's "cutter" machine for employees on the "B shift." (DSUF ¶¶107-110.)

- In early January 2013, Marsden missed the deadline for completing 2012 written performance reviews for his subordinates. (DSUF ¶111.)

- On January 7, 2013, Marsden allowed a subordinate employee to conduct a training session for which Marsden was responsible. (DSUF ¶¶112-114.)

- On January 9, 2013, Marsden arrived twenty minutes late for the start of his shift in which he was to orient a new production manager for "B night" shifts. (DSUF ¶¶115-116.)

- In early 2013, Marsden was frequently absent from daily production and call-in meetings. (DSUF ¶117.)

Marsden's actions resulted in a January 31, 2013 "Final Warning" issued by Shirakawa to

Marsden. (DSUF ¶118.) RRD's Hertneky and Zdobinski approved the "Final Warning." (DSUF

¶122.) The "Final Warning" noted the performance concerns previously discussed with Marsden, and required Marsden to develop by February 8, 2013, a "Letter of Commitment/Performance Improvement Plan" ("PIP") to address and correct his performance issues going forward. (DSUF ¶¶119-121.) Shirakawa and Ricciuti met with Marsden on January 31 to discuss the "Final Warning." (DSUF ¶123.) Marsden, then 52-years old, left the meeting without signing the "Final Warning." (DSUF ¶124.). Neither Defendants nor Marsden present evidence, or argument, they discussed age discrimination during the January 31 meeting. Shirakawa and Marsden never spoke again after the January 31, 2013 meeting. (DSUF ¶125.)

### E. After not mentioning age in the Final Warning meeting nor in his detailed February 2 email, Marsden tells RRD'S Employee Relations Director of age discrimination.

Two days after the Final Warning and meeting with Shirakawa, Marsden emailed RRD's Chief Executive Officer, Vice President of Operations, Hertneky, Zdobinski, Ricciuti, and Shirakawa. (DSUF ¶¶126, 135.) The email, with the subject line "Poor Judgment," detailed Marsden's considered thoughts about perceived "unjustified treatment." (DSUF ¶¶126-129.) [4]

---

[4] Marsden has no explanation for his failure to include concerns about age bias or retaliatory conduct in the February 2, 2013 email. Regarding his email, Marsden testified:

> Q. This is an e-mail, a rather lengthy email. It goes all the way to the end of this exhibit. It is from you to all these R.R. Donnelly individuals; right?
> A. Yes.
> Q. Why did you write that e-mail?
> A. I was kind of upset over the warning. I knew that my days were even more numbered than they were. And I just sat in the office on Saturday morning and started typing away. I got up, walked out into the plant, did a round, went across to the other building and then came back and started writing again.
> Q. Was your purpose to really lay out in full all the reasons why you felt you were being treated unfairly?
> A. Yes.
> Q. So where in this email does it indicate that you were given the final warning or any other disciplinary action because of your age?
> A. I guess I forgot to put that one in this e-mail.

Marsden's lengthy email does not accuse or charge age discrimination. (DSUF ¶¶130-131.) RRD appointed Rebecca Robertson, Director of Employee Relations for RRD, to investigate Marsden's concerns. (DSUF ¶132.)

Robertson, located in Indiana, spoke with Marsden by telephone regarding his February 2, 2013 email. (DSUF ¶133.) After not mentioning age in his January 31 meeting or his lengthy February 2 email, Marsden now told Robertson he felt Shirakawa discriminated against him because of age. (DSUF ¶134.) At this stage, Defendants already required the PIP and had met with Marsden. Marsden identified several RRD employees for Robertson to interview in her investigation; six bindery and press operators and Ricciuti, the Baum Plant's Human Resource Manager. (DSUF ¶139; MSJ000165.) None of the six bindery and press operators interviewed by Robertson reported hearing Shirakawa or any other RRD employee make age-based comments. (DSUF ¶¶145-163; MSJ000167-182.) However, one employee interviewed by Robertson told her other employees – whom he could not identify - told him they heard age-based comments. (DSUF ¶151; MSJ000176.)

---

Q. Where in this e-mail does it indicate that you were given any disciplinary actions because you had complained about age discrimination?
A. It's not in there.
Q. Why did you leave it out?
A. I don't know.
Q. You can't provide me an explanation?
A. I can't provide you an explanation. I was just going on everything that was going on around me at the time, and I was just going on and on.
Q. Anything that was coming to your mind, you were writing down; right?
A. Yes. Then I walked through the plant and was coming back and did it again. And for some reason, that one didn't come to my mind.
Q. So you didn't mention age discrimination, and you didn't mention retaliation for having complained about age discrimination?
A. No.

(MSJ000563-564).

During the course of her investigation, Robertson became aware of the 2009 investigation from speaking with Marsden. (MSJ000278.) Marsden did not have specific information about the investigation, so Robertson contacted Jan Hoover, a retired Vice President of Human Resources. (*Id.*) Hoover told Robertson to contact Gaskill, who provided Robertson with information regarding the 2009 investigation. (MSJ000278-279.)

However, neither Ricciuti nor Shirakawa told Robertson about the 2009 investigation when initially interviewed. (PCSUF ¶13; DRSUF ¶13; PCSUF 16; DRSUF ¶16.)) Robertson questioned Ricciuti regarding the 2009 investigation and Ricciuti's failure to report that investigation to Robertson. (MSJ000171-172.) According to Robertson's notes of investigation, "[i]t appeared that there was an allegation that the plant was discriminating in hiring based upon age, and Ricciuti [sic] seemed to support this allegation." (MSJ000171.) Ricciuti told Robertson about Shirakawa's hiring practices and preferences based on age. (*Id.*) Ricciuti suggested a problem in the past addressed by Platia and Gaskill, and reported a "significant change" since 2009 which Ricciuti attributed to Gaskill and Platia's work with Shirakawa to "mak[e] sure he understood the company's expectation." (MSJ00171-172.)

Robertson interviewed Shirakawa. (DSUF ¶143.) Shirakawa denied making any age-related comments or employment decisions. (DSUF ¶144.) Robertson spoke to Shirakawa for a second time after learning about the 2009 investigation. (MSJ000173.)

Robertson additionally spoke with Hertneky and Zdobinski during her investigation. (DSUF ¶164.) Upon concluding her investigation, Robertson determined Marsden's age concerns made solely to her lacked merit and the January 31 disciplinary action challenged in the February 2, 2013 email justified and addressed legitimate business concerns. (DSUF ¶165.)

## F. RRD terminates Marsden on February 15, 2013

On February 15, 2013, Robertson spoke with Marsden and emailed the findings of her investigation to him. (DSUF ¶166.) Robertson told Marsden "we are unable to substantiate the allegation that there have been recent discriminatory remarks made by Mike [Shirakawa] . . .." (DSUF ¶167.) Robertson stated "our sincere hope continues to be that you will complete the Performance Improvement Plan and commit to change the behavior that has been brought to your attention, which we believe needs to be addressed." (DSUF ¶168.)

In a series of email exchanges between Robertson and Marsden on February 15, Robertson requested Marsden to complete the PIP. (DSUF ¶¶169-171.) Marsden refused to do so, characterizing the PIP as "an admittance." (*Id.*; DSUF ¶¶173-175.) Given his lengthy February 2 email, it is unclear how Marsden is admitting anything and he did not explain his excuse in discovery. Robertson terminated Marsden on February 15, 2013 for failing to submit the PIP, due February 8. (DSUF ¶176.) There is no evidence Robertson made this decision with input from Shirakawa. (DSUF ¶177.) Marsden testified he feared reporting the age discrimination earlier.

## G. Marsden is replaced by an older employee

Shirakawa replaced Marsden with Mark Smith, born in 1953 and 59-years old at the time of Marsden's termination. (DSUF ¶¶179-181.) As of May 3, 2015, Smith continues to hold the position. (DSUF ¶182.)

## II. Analysis

Marsden sues his former employer RRD for discrimination, hostile work environment, and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. §951 *et seq.* Marsden

additionally brings an "aiding and abetting" claim against his supervisor Shirakawa under the PHRA (Count III).[5] Defendants moved for summary judgment on all claims.[6]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Williams v. Wells Fargo Bank,* No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting *Wright v. Corning,* 679 F.3d 101, 105 (3d Cir. 2012)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

---

[5] We read Count I to contain both a disparate treatment and hostile work environment claim under the ADEA. Count I alleges Marsden "was subjected to a hostile work environment based on his age (52), creating an environment that was both objectively and subjectively hostile and offensive." (First Am. Compl. at ¶39 ECF Doc. No. 4.) In support of this claim, Marsden alleges Shirakawa's comments in and around 2007 "created a hostile work environment" and his belief "submitting to the [PIP] would allow Defendants' hostile behavior to continue." (*Id.* at ¶¶17, 32). Count II is a retaliation claim under the ADEA. Count III asserts claims of age discrimination under the PHRA as well as an aiding and abetting claim under the PHRA against Shirakawa, the only remaining individual defendant. Defendants moved for summary judgment on all claims. Plaintiffs' Oppositions, however, address only the retaliation claim.

[6] Plaintiff's wife, Margaret Marsden, initially brought a loss of consortium claim against all Defendants (Count IV). Dennis Marsden's PHRA claim (Count III) initially named as defendants RRD employees, or former employees, Shirakawa, Christine Hertneky, Donna Ricciuti, Carrie Zdobinski, Rebecca Robertson, and John Rossello. *See* First Amended Complaint (ECF Doc. No. 4). On November 18, 2014, Plaintiffs voluntarily dismissed Margaret Marsden's loss of consortium claim (Count IV) and dismissed Hertneky, Ricciuti, Zdobinski, Robertson, and Rossello as defendants from the PHRA claim (Count III) pursuant to Fed.R.Civ.P. 41. (ECF Doc. No. 10). Plaintiffs also sued "John Does 1-10" but provided no evidence as to their identities and did not substitute any individual or entity for the "John Does." Accordingly, we find they abandoned claims against any John Does.

Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of its case. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). The court must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir.2006)). To prevail on a motion for summary judgment, however, "'the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Burton*, 707 F.3d at 425 (quoting *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (alteration in original)); *see also Anderson*, 477 U.S. at 252.

## A. Age discrimination under ADEA and the PHRA[7]

ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions or privileges of employment on the basis of age. 29 U.S.C. §623(a)(1). To establish an ADEA violation, a plaintiff must prove his age had a "determinative influence on the outcome. To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was a 'but-for' cause of the employer's adverse decision." *Heffelfinger v. Ecopax, Inc.*, No. 13-2476, 2015 WL 2126993, at *2 (E.D. Pa. May 7, 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("*Gross*")). Our inquiry will be governed by the three-part burden shifting analysis of *McDonnell Douglas v.*

---

[7] We analyze Marsden's claims under ADEA and PHRA together. The same legal analysis and standards are applicable to both ADEA and PHRA claims, and courts address such claims collectively. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (citing *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004)). *See also, Burton v. Teleflex, Inc.*, 707 F.3d 417, 431-32 (3d Cir. 2013) (PHRA claims "should be interpreted coextensively" with ADEA claims.)

*Green*, 411 U.S. 792 (1973). *See Smith v. City of Allentown,* 589 F.3d 684, 690-91 (3d Cir. 2009) (applying *McDonnell Douglas* to ADEA cases after *Gross*).

Under the first step of the *McDonnell Douglas* analysis, Marsden bears the burden of establishing a *prima facie* case of discrimination: (1) he is forty years of age or older; (2) Defendants took an adverse employment action against him; (3) he was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton,* 707 F.3d at 426 (citing *Smith*, 589 F.3d at 689).

Defendants argue Marsden cannot establish a *prima facie* case of age discrimination under ADEA because (1) Defendants replaced Marsden with an *older* employee and (2) Marsden is not qualified for his position because of disability. Defendants additionally argue even if Marsden established a *prima facie* case, he failed to meet his burden of proving pretext.[8]

We find Marsden cannot establish the fourth element required for a *prima facie* case of age discrimination.[9] There is no dispute Shirakawa replaced Marsden with another employee born in 1953 and 59-years old at the time of Marsden's termination. (DSUF ¶¶179-181.) Marsden failed to address this argument in his Opposition and provides no evidence to counter this fact.

---

[8]  Because we find Marsden failed to establish a *prima facie* case, we do not reach Defendants' alternative argument on pretext.

[9]  Defendants argue Marsden is not qualified for the job, and therefore does not meet the third element of the *prima facie* case, because he represented to the United States Department of Veteran Affairs ("VA") in applying for benefits his inability to "secure any substantially gainful occupation." (DSUF ¶¶185-198; Defendants' brief at 15-16 (ECF Doc. No. 25).) Defendants argue Marsden should be judicially estopped from asserting he is "qualified" for his position at RRD based on his representations to the VA. (*Id.*) Because we find Marsden failed to meet the fourth element of the *prima facie* case, we do not decide the "qualified for" element.

Marsden does not meet his *prima facie* burden, and summary judgment is properly granted for Defendants. "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, [he] has not met [his] initial burden, and summary judgment is properly granted for the defendant." *Burton*, 707 F.3d at 426 (citing *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir.1996)).

## B.  Retaliation under ADEA and PHRA

The Court is faced with a closer question in whether there are genuine issues of material fact regarding RRD's firing Marsden on February 15, 2013 because he did not prepare a PIP required by his supervisor's January 31, 2013 Final Warning. Marsden claims RRD's insubordination reason is a pretext and RRD fired him because he complained of age discrimination and not due to his admitted failure to prepare a PIP.  On close examination of the record, Marsden posits sufficient direct and circumstantial evidence to raise disputed facts on whether RRD terminated him in retaliation for age discrimination claims again raised against Shirakawa rather than the stated legitimate reason for insubordination.  His competent evidence creating genuine issues of material fact includes his belatedly raised subjective opinions posited in a phone call to RRD's Robertson, Robertson's report of another employee raising questions, as well as the history of concerns surrounding Shirakawa's treatment of employees based on age. At this stage, it is not our role to find which reason is credible; both explanations are supported by evidence, and while RRD's subordination argument presently holds the greater weight of evidence, we cannot, on summary judgment, usurp the jury's role to make credibility determinations.

ADEA provides, in relevant part, "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made

unlawful by this section." 29 U.S.C. §623(d). Retaliation claims under ADEA are governed by the burden-shifting framework of *McDonnell Douglas*. *Klastow v. Newtown Friends School*, 515 F.App'x 130, 132 (3d Cir. 2013). Under the *McDonnell Douglas* framework, a plaintiff asserting a retaliation claim first must establish a *prima facie* showing "(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. School Dist. of Phila.*, 776 F.3d, 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). Here, RRD concedes Marsden established a *prima facie* case of retaliation based on his participation in the 2009 investigation and his February 2013 complaint to Robertson about Shirakawa's age discrimination. *See* Defendants' brief at 20 (ECF Doc. No. 25).

If a plaintiff establishes a *prima facie* case, the burden of producing evidence shifts to the employer to present a legitimate, non-retaliatory reason for the adverse action. *Daniels*, 776 F.3d at 193. RRD asserts Marsden's failure to complete the PIP as required by the "Final Warning" is its legitimate, non-retaliatory reason for Marsden's termination. RRD seeks summary judgment for Marsden's failure to create a genuine issue of material fact as to whether its legitimate non-discriminatory reason for his termination was pretext for retaliation.

The burden shifts back to Marsden to demonstrate RRD's reason is pretextual. To do so, Marsden "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a . . . determinative cause of the employer's action." *Id.*, 776 F.3d at 198-99 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d

Cir.1994)). To meet his burden, Marsden offers the following arguments to discredit RRD's legitimate, non-discriminatory reason for his termination.

### 1. Formal discipline after Marsden's June 2012 complaints to Hertneky

Marsden began working for RRD in 2001, but never received "formal discipline" until 2012 when he "formally complained" to Hertneky about age discrimination. Marsden contends he received "Formal Reminders" on August 9 and November 9, 2012, and the "Final Warning," requiring completion of the PIP, on January 31, 2013. These warnings do not create a fact issue on RRD's legitimate non-retaliatory reason for discharge, but they do create a context for Marsden's later age discrimination claim and may serve as the basis for a jury to believe RRD retaliated against Marsden's continuing age claims regarding Shirakawa.

Marsden admitted RRD did not issue the August and November 2012 "Formal Reminders" in retaliation for complaints about age.[10] Having so admitted, the August and

---

[10] Marsden admitted the August 9, 2012 "Formal Reminder" was not in retaliation for complaints about age discrimination.

> Q. If you look at Exhibit 14, it says the reason for your counseling was your reaction to employee questions/statements in the employee meeting on August 9th, 2012 was perceived as defensive, overreacting and unprofessional?
> A. Yes.
> Q. That is what you are referring to?
> A. Yes.
> Q. The reference to the reprimand in Paragraph 25 of the Amended Complaint is a reference to the August 9th, 2012 Formal Reminder?
> A. Yes.
> Q. But you had had unsatisfactory performance discussion with you before that; right?
> A. Unsatisfactory performance has always been discussed that way.
> Q. So are you saying that you were retaliated against for having complained to Ms. Hertneky?
> A. That's my feeling, yes.
> Q. But you also indicated to me that you didn't mention anything about age discrimination during that complaint to Ms. Hertneky.
> A. At that one, no.
> Q. So if you were being retaliated against through Exhibit Number 14, that wasn't retaliation for having complained about age discrimination; was it?

November 2012 "Formal Reminder" disciplines do not constitute the adverse employment action caused by an age discrimination complaint. As Marsden concedes, these "Formal Reminders" are not retaliatory. RRD does not argue these discipline steps are legitimate business reasons to terminate Marsden.

The June 2012 complaint to Hertneky may infer protected conduct later the subject of RRD's retaliation.[11] In determining whether a sufficient causal link exists between a protected

---

    A. No.

(MSJ000533-534).

Marsden again admitted the November 9, 2012 "Formal Reminder" was not issued because of age.

    Q. Do you believe that you were given this Formal Reminder because of your age?
    A. No.
    Q. So nothing about this document was discriminatory towards you because of your age?
    A. No.

(MSJ000482.)

[11] Marsden testified he "was afraid" to tell Hertneky he feared Shirakawa terminating him because of age:

    Q. This doesn't say that you complained to Ms. Hertneky that you feared Mr. Shirakawa was going to unjustly terminate you because of your age. Did you tell Ms. Hertneky that you feared Mr. Shirakawa was going to terminate you because of your age?
    A. No. I was afraid to.
    Q. Why were you afraid to?
    A. Because I just was.
    Q. Why?
    A. I was thinking more the way I was being treated, and that the treatment probably wouldn't stop.
    Q. So you didn't think it was because of your age?
    A. I did think it was because of my age, but I didn't think – it's not just the age. It is everything, but it is the age, too.
    Q. So it is multiple things including age?
    A. Including age.
    Q. But you were already complaining to her about Mr. Shirakawa. If you thought it was age, why didn't you mention it?
    A. I don't know.

(MSJ000529-530).

activity and an adverse action to survive summary judgment, the Court may consider "a broad array of evidence." *Daniels,* 776 F.3d at 198 (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). This causal link may be shown through temporal proximity if "unusually suggestive." *LeBoon*, 503 F.3d at 232. Where there is no "close temporal proximity," a court may consider "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196. Although there is "no bright line rule" on what constitutes "unusually suggestive" temporal proximity, a three month gap between the protected activity and the adverse action, without more, did not create an inference of causation sufficient to defeat summary judgment in *LeBoon*.[12] Here, the June 2012 complaint may reasonably suggest to the jury an additional basis for RRD's retaliatory animus resulting in the February 15, 2013 termination.

On February 2, 2013, two days *after* receiving the "Final Warning" imposing the PIP requirement, Marsden emailed RRD's Chief Executive Officer, Vice President of Operations, Hertneky, Zdobinski, Ricciuti, and Shirakawa complaining about "unjustified treatment." He again does not accuse or charge age discrimination, and instead complains about business decisions and conditions within the plant, and disputes the bases of the "Final Warning." He rejects each business reason and complaint about his performance. He notably did not complain

---

[12] Our Court of Appeals, affirming a district court's order granting summary judgment, recently found adverse actions taken one month, and adverse actions taken more than one year, after an employee engaged in protected activity is not "unusually suggestive of a discriminatory motive." *See Thomas-Taylor v. City of Pittsburgh,* No. 14-3661, 2015 WL 1299939, *2 (3d Cir. Mar. 24, 2015). *See also Gillyard v. Geithner,* No. 12-125, 2015 WL 346158, *6-*8 (E.D.Pa. Jan. 28, 2015) (Defendant's refusal to rehire plaintiff two months, seven months, eight months, and two-and-a-half years after he filed complaints alleging race discrimination not unusually suggestive.)

about age discrimination in response to the Final Warning until *after* RRD's Robertson called him about his February 2, 2013 email. RRD already imposed the Final Warning based on enumerated business reasons and Marsden answered them. He mentions age in his third interaction. His concerns are investigated and RRD informs him of their investigation. He then decides not to prepare the PIP because it would be "an admittance" notwithstanding his detailed denials in the February 2 email. RRD again directs him to prepare the PIP, then overdue by a week. He simply refuses. RRD is now left with an employee who will not fulfill a directive to improve his performance and remain on the job. There is no evidence RRD allows younger employees to remain working when they refuse to prepare a PIP. [13] Regardless of Marsden's age, RRD perceives a business reason to terminate an insubordinate employee.

The issues of material fact arise from Marsden's protected speech concerning age discrimination shortly before his February 15, 2015 termination and the findings from an investigation into his age discrimination complaint. He again raises an issue regarding Shirakawa's treatment of employees differently because of their age. In this February 2013 investigation, neither Shirakawa, President of the Baum Plant, nor Ricciuti, Human Resource Manager of the Baum Plant, initially told Robertson of the 2009 investigation. RRD's Ricciuti initially did not tell Robertson of the 2009 investigation, but after Robertson confronted Ricciuti about the 2009 investigation, Ricciuti tells Robertson about concerns with Shirakawa's hiring practice. Shirakawa also does not disclose to Robertson the 2009 challenges to his age-based conduct. RRD's Robertson concludes there is no age discrimination under Shirakawa and directs Marsden to prepare the PIP. The dispute arises over whether Robertson's decision to terminate

---

[13] Marsden does not dispute Robertson's testimony he was the only employee she could recall who refused to execute a PIP after learning failure to do so would result in termination. (DSUF ¶178; PRSUF ¶178.)

Marsden is based on admitted insubordination or is a product of age discrimination raised by Marsden and later mentioned by Ricciuti and curiously initially concealed by both the President and Human Resource Manager of the Baum Plant. The record also reflects job security concerns if employees engage in protected conduct in speaking of age discrimination. It is difficult for this Court to summarily dismiss these repeated fears and thus, on a disputed factual record, emasculate the concept of "protected" conduct fundamental to enforcing anti-retaliatory modes of employer conduct. Ricciuti's and Shirakawa's omission of past age-based claims in their reports to Robertson raise additional questions concerning a job security fear in reporting age-based conduct.

The jury, not this Court, will evaluate the credibility of these witnesses. We do not rely on Robertson's determination of no discrimination on this record of repeated concerns when, as here, the employee adduces sufficient direct and circumstantial evidence RRD's Shirakawa adversely differentiated between Marsden and younger employees in a workplace where at least three employees were not immediately forthcoming about age discrimination in the Baum Plant.

These genuine issues of material fact, motivation and credibility require jury determination. Defendants' motion for summary judgment on the retaliation claims based on these disputed issues is denied.

## 2. Defendants' reasons for Marsden's discipline were "ever-changing"

The record shows Robertson terminated Marsden for failing to complete the PIP. (DSUF ¶176.) Marsden does not dispute he failed to prepare the PIP. (PRSUF ¶176.) Marsden, however, asserts Defendants' reasons for discipline were "ever-changing" and for a "litany of reasons such as lateness and isolated incidents of yelling," suggesting these reasons are pretextual. Although Marsden points to "many examples on the record," he provides the Court

with only a few: despite Shirakawa's long-standing concern with Marsden's "military style" in dealing with subordinates, Marsden did not receive discipline until 2012; Defendants' "incorrectly cited" Marsden for hiring his grandson; and Defendants cited Marsden for being a few minutes late to formal meetings. Marsden argues this discipline is inconsistent with the "belief" by "Defendant management" of Marsden's skill as a "highly qualified machine operator."

We find none of these reasons individually overcome RRD's legitimate business reason based on insubordination. These additional facts arise before Marsden's February 2013 age discrimination claim and Robertson's investigation. Alone, they would not reasonably persuade the jury to either (1) disbelieve Defendants' articulated legitimate reason for his termination; or (2) believe an "invidious retaliatory reason" was more likely than not a determinative cause of Marsden's termination. These reasons are unrelated to RRD's stated legitimate reason.

### C. Hostile Work Environment claim under ADEA

To establish a *prima facie* case of hostile work environment, Marsden must show (1) he was harassed because of his protected trait, (2) the discrimination was subjectively and objectively detrimental and severe or pervasive, and (3) *respondeat superior* liability exists. *Beaubrun v. Thos. Jefferson Univ.*, 578 F.Supp. 2d 777, 783 (E.D. Pa. 2008) (citing *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993) and *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)). "To prevail on a hostile work environment claim, a plaintiff must show that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an

abusive working environment.'" *Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).[14]

We find Marsden failed to proffer evidence of "severe or pervasive" harassment. In determining whether the allegedly hostile conduct is "severe or pervasive," we look at the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Beaubrun*, 578 F.Supp. 2d at 783 (citing *Harris*, 510 U.S. at 23).

Here, Marsden does not specifically point to any such conduct, apparently relying on the conduct serving as the basis of his ADEA disparate treatment and retaliation claims. We find this conduct does not rise to the level of severe and pervasive, particularly when viewed against Marsden's testimony that his performance reviews and disciplinary actions in August and November 2012 were not because of age. Summary judgment is entered in Defendants' favor on a hostile work environment claim.

### D. Aiding and Abetting Claim against Shirakawa

Marsden also claims Shirakawa aided and abetted RRD in violating the PHRA. Section 955(e) of the PHRA provides for individual liability for aiding and abetting unlawful discriminatory practices under the PHRA. Section 955(d) makes it unlawful for "any person . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an

---

[14] In *Culler*, our Court of Appeals noted it had "yet to decide whether a hostile work environment claim is cognizable under ADEA. For now we assume, without deciding, that it is and that '[t]he analysis of the hostile working environment theory of discrimination is the same under ADEA as it is under Title VII.'" *Culler*, 507 F.App'x at 249 n.3 (citing *Brennan v. Metro. Opera Ass'n., Inc.*, 192 F.3d 310, 318, (2d Cir. 1999)). *See also Volk v. School Dist. of Phila.*, No. 12-1432, 2013 WL 607843 *9 n.52 (E.D. Pa. Feb. 19, 2013) ("Although the Third Circuit has not specifically held that a hostile work environment claim is available under ADEA, district courts in this Circuit have assumed the viability of such a claim.")

unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice." 43 Pa. C.S.A. § 955. *See also Dici v. Comm. of Pa.*, 91 F.3d 542, 552-53 (3d Cir. 1996).

Summary judgment is entered in favor of Defendants on Marsden's ADEA and PHRA for age discrimination disparate treatment and hostile work environment. Shirakawa cannot be liable for aiding and abetting under §955(e) where there is no primary violation of the PHRA. *Elmarakaby v. Wyeth Pharm., Inc.*, No. 09-1784, 2015 WL 1456686, at *9 (E.D. Pa. Mar. 30, 2015).

Finding Marsden's retaliation claim under ADEA and PHRA to survive summary judgment, Shirakawa can be liable, under the statutory language, if the jury first finds in favor of Marsden on the retaliation claim against RRD and then finds Shirakawa aided or abetted RRD's retaliatory firing.

## III.    Conclusion

We grant Defendants' motion on Marsden's age discrimination and hostile work environment claims. Marsden failed to meet his burden of establishing a *prima facie* case of age discrimination. There is no evidence RRD terminated him under circumstances giving rise to an inference of discrimination. It is undisputed RRD replaced Marsden with an older employee. Summary judgment is properly granted in Defendants' favor. Similarly, Marsden failed to meet his burden of establishing a *prima facie* case of hostile work environment. There is no evidence of severe or pervasive discrimination.

We deny Defendants' motion on Marsden's retaliation claim. Marsden met his burden of showing some evidence, direct or circumstantial, from which a factfinder could reasonably either

disbelieve Defendants' articulated legitimate reasons for his termination or believe an invidious retaliatory reason was more likely than not a determinative cause of his termination. Summary judgment is denied on Marsden's retaliation claim (Count II) and aiding and abetting retaliation in violation of PHRA (Count III).